Van Voorhis, J.
Appellants operate the barber shop in the Park Central Hotel in New York City. Appellant, Arthur Grasso is the proprietor. Eleven barbers and three manicurists are normally employed there and were in September, 1944, when the Barbers & Beauty Culturists Union of America, C. I. 0., Local 1, started to organize this shop. The Grasses tried to prevent this and on October 25,1944, Mr. Grasso requested each employee to sign a paper repudiating the union. Nine of his employees admitted that they had joined the union and refused to sign. Three of these were discharged upon that day, October 25,1944, and the remaining six ceased to be Grasso’s employees within the next seven weeks. The examiner for the State Labor Relations Board reported that those who were discharged on October 25th and three of the remaining six were let go on account of their *151 union membership, but he held that this was not true of Lallier, Gucciardi and Rosillo who remained on the payroll until November 6th, December 13th, and December 16th respectively. The Labor Relations Board did not follow his recommendations as to these three, and made findings that they were discharged for the same reason as the others and ordered the reinstatement of all nine with back pay. Special Term refused to confirm the direction for reinstatement of Lallier, but confirmed it in the cases of Gucciardi and Rosillo, with respect to whom this appeal has been taken.
The findings of the Labor Relations Board are upheld by the evidence in the case of all of those employees whose reinstatement was recommended by the examiner, and also in the case of Gucciardi. There was a question of fact for the board to decide concerning whether Gucciardi was discharged for any other reason than his joining the union. Other barbers failed to wear white shoes when rationing limited the available supply, others smoked on the stairs in the hotel, and Gucciardi’s meeting and conversing with a former fellow employee on the sidewalk in his barber’s uniform on one occasion was hardly a normal basis for discharge. On the other hand, the record does not support the findings of the board concerning Rosillo. The order appealed from should be modified by eliminating him from its provisions.
Although the examiner’s finding that Rosillo quit — he testified that he was leaving for California soon after the hearing for three or four months on “ a family affair ” — was not adopted by the board, the undisputed evidence is that his employment terminated in consequence of his refusal to work at the particular barber’s chair in the shop to which he was assigned by the employer. There were eleven barbers and ten chairs in the shop, someone had to work at the less desirable chair, Rosillo admittedly had been out for a week or more due to an injury sustained from bumping his head on a door, and another barber had taken chair No. 7 beside which he had worked for a number of months when he bumped his head. His total employment in Grasso’s shop had been for seven months, during which period he admits to having been away from work upon a number of other occasions for several days at a time on account of illness. Grasso testified “ There is always something wrong with him. It would be in the middle of the day he was working and he would get a pain and he have to go home * * Rosillo was apparently aware that Grasso had been annoyed by that sort of thing as shown by Rosillo’s statement that in assigning him to *152 chair No. 5 instead of No. 7 Grasso “ was punishing me, you know, for what I had done on my injury.”
The board, overruling the examiner, found that Rosillo was being punished for having joined the union.
Whether this was a permanent assignment to chair No. 5 does not appear; there is evidence of considerable shifting around among the chairs due to there being more barbers than chairs. After working on one customer in chair No. 5, on December 16, 1944, Rosillo went to Grasso and told him that he would not work any more at that chair. Grasso told him that if he would not work there he should quit. Rosillo then left. This is Rosillo’s story which demonstrates that he was not discharged but left voluntarily on account of his dissatisfaction at being assigned to work at this barber’s chair.
The objection to chair No. 5 was that it was next to the outside door of the shop (which also had a storm door) and was drafty when customers went in or out, particularly in winter. These men were so sensitive on the point that one of them testified that he found himself physically unable to work so near to the door in the month of August. Nor was that the only drafty chair. There were complaints about chair No. 1 that it was beneath the vent from the air conditioner, so that it received too much cold air in the warm season. This does not concern entirely the convenience of the barber. Some chairs are more popular with customers than others, and, working on a commission basis, a barber undoubtedly makes more money at one chair than at others. That would be true in any barber shop.
Under the order appealed from affirmative action is to be taken by appellants who must offer to restore Rosillo to his “ former position.” Does that mean that he must be restored to chair No. 7 where he worked for a few months, to chair No. 1 which has too much cold air in the summertime or to chair No. 5 that he formerly refused which has too much cold air in the -wintertime? Does employment in a barber shop involve a separate position for each chair at which a barber works, and can it be the function of the Labor Relations Board to tell a master barber to which chairs his men shall be designated? Doubtless a labor contract could be entered into providing for the assignment of barber chairs in order of seniority, or in some other manner. There is nothing of that kind involved in this proceeding, nor does it appear what is the order of seniority of these barbers. Drafts may be part of the conditions of employment which could become the subject of collective bargaining, but it is not an unfair labor practice under the State Labor *153 Relations Act for the proprietor of a barber shop to tell his employees at what chairs he wants them to work even if — as must generally be the case — some are more desirable than others. There is no more evidence that Rosillo was being discriminated against for union activity than that the union official who interceded for him was trying to put a nonunion man in a draft. If appellants had discharged a union barber on 'the ground that chair No. 5 was not fit for occupancy, it is unlikely that the accusations of anti-union activity would have been less emphatic. If the number of employees were to be reduced, the law would not dictate to an employer whether he should discharge a union or a nonunion man, and it would lie in the employer’s discretion whom he should let go. In this case the board commanded Grasso to restore all seven of the union barbers., In addition to them, there were four nonunion men in the shop before any of these discharges. That makes eleven barbers and ten chairs. All of the chairs had to be occupied during the main part of the day. Who did the board expect would work in chair No. 5? None of the few who were asked about it admit having been permanently attached to that chair; some admit working there temporarily. The board evidently did not attempt to direct, and only with great difficulty could have directed at what chairs the men were to work.
It may be surmised from the discharge of the others that Grasso was not unhappy to be able to get rid of Rosillo, who had not been with him long and never seems to have been exactly persona grata, but that does not alter the fact that, on Ms own testimony, Rosillo quit rather than comply with a demand of his employer which could not be held unreasonable.
This is not sufficient to rise to the dignity of substantial evidence wMch is necessary to uphold the determinations of the Labor Relations Board. A proprietor must be allowed some latitude in running his own shop, and is not to be kept in a permanent strait jacket because he has engaged in an unfair labor practice respecting other employees for which the penalty that the law requires has been exacted.
The order, so far as appealed from, should be modified in accordance with this opinion and, as so modified, affirmed, with costs and disbursements to the appellants.
Martin, P. J., Cohn, Callahan and Peoic,'JJ., concur.
Order, so far as appealed from, unanimously modified in accordance with opinion and, as so modified, affirmed, with costs and disbursements to the appellants. Settle order on notice.